UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CIVIL ACTION NO. 5:10-CV-00391-BO

| | |
|---|---|
| SURJIT SINGH SAUND, an individual, ) | |
| ) | |
| Plaintiff, ) | |
| ) | MEMORANDUM OF LAW IN |
| v. ) | SUPPORT OF DEFENDANT'S |
| ) | MOTION TO DISMISS AND FOR |
| ) | PARTIAL SUMMARY JUDGMENT |
| M. M. FOWLER, INC. d/b/a FAMILY ) | (F.R. Civ. P. 12(b)(6) and 56) |
| FARE CONVENIENCE STORES, a ) | |
| North Carolina Corporation, ) | |
| ) | |
| Defendant. ) | |

Pursuant to Rule 12(b)(6) and Rule 56 of the Federal Rules of Civil Procedure, Defendant M. M. Fowler, Inc. d/b/a Family Fare Convenience Stores ("Fowler") respectfully submits this Memorandum in Support of Defendant's Motion to Dismiss and for Partial Summary Judgment.

## NATURE OF THE CASE

This civil action arises out of Plaintiff Surgit Singh Saund's ("Plaintiff") unsuccessful attempts to become a Family Fare store operator. Plaintiff alleges that Fowler denied him the store operator position because of his religion (Sikhism) and race (Sikh). Specifically, Plaintiff alleges that Fowler conditioned the store operator position on Plaintiff's taking off his turban and cutting his hair and beard. He asserts claims of religious discrimination under Title VII, race discrimination under 42 U.S.C. § 1981, and wrongful failure to hire/contract in violation of public policy under North Carolina common law. Fowler is entitled to summary judgment on Plaintiff's Title VII religious discrimination claims because he failed to commence this action within 90 days after receiving the operative right-to-sue letter from the EEOC. Plaintiff's § 1981 racial discrimination claim should be dismissed with prejudice because it lacks plausibility and

his own admissions disprove the claim. Plaintiff's wrongful failure to hire/contract claim should be dismissed with prejudice because North Carolina recognizes no such claim.

## STATEMENT OF FACTS

### I. PROCEDURAL HISTORY

On July 24, 2008, Plaintiff filed a Charge of Discrimination with the EEOC (Complaint ("Compl."), ¶ 5). On February 16, 2010, the EEOC issued a Dismissal and Notice of Rights (the "First Right-to-Sue Letter") to Plaintiff (Declaration of Richard M. Hutson, II, ¶ 3, Ex. A (hereinafter "Hutson Dec."). The document indicates February 16, 2010 as the "Date Mailed" to Plaintiff. (*Id.*) The First Right-to-Sue Letter stated that the EEOC was closing its file on Plaintiff's charge because there was "No Employer - Employee Relationship" (*Id.*). It explained that Plaintiff could file a lawsuit against Fowler, but cautioned: "Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost." (*Id.*) Plaintiff did not file a lawsuit within that 90-day period. On May 28, 2010 (101 days after the issuance of the First Right to Sue Letter), EEOC and Fowler met to attempt conciliation regarding Fowler's dress code, but were not able to reach a resolution. (*Id.* at ¶ 6.) Plaintiff was not a participant in the conciliation and there was no discussion of conciliation of his individual claims. (*Id.*) On June 23, 2010, the EEOC issued a second Dismissal and Notice of Rights (the "Second Right to Sue Letter"). (*Id.* at ¶ 7, Ex. C). Plaintiff commenced this action by filing a Complaint on September 21, 2010, which was 217 days after the EEOC issued the First Right-to-Sue Letter. Fowler filed its Motion to Dismiss and for Partial Summary Judgment on November 15, 2010, and this motion is now before the Court.

## II.  FACTS ALLEGED IN THE COMPLAINT[1]

Plaintiff alleges that as a devout Sikh, he has a sincerely held religious belief that he must keep his hair, including facial hair, unshorn and wear a turban. (Compl., at ¶¶ 11, 16.) He alleges that he has never cut his hair, and that he has covered his head since childhood. (*Id.* at ¶ 17.) Plaintiff alleges that these practices are central requirements of the Sikh religion. (*Id.* at ¶ 16.)

Plaintiff alleges that he contacted Fowler in January 2008 to inquire about a store operator position. (*Id.* at ¶ 23.) Plaintiff alleges that Jim Hanson, a Fowler account executive, informed him that he was pre-qualified for the position based on a telephone interview. (*Id.* at ¶ 24.) Plaintiff alleges that Hanson invited him to Fowler's Durham offices for a follow-up meeting. (*Id.*) Plaintiff alleges that when he met Hanson at Fowler's Durham offices, Hanson stated that he would not discuss the store operator position unless Plaintiff removed his turban, cut his hair, and shaved his beard. (*Id.* at ¶ 26.) Plaintiff alleges that Hanson informed him that his turban, hair, and beard were not permitted under Fowler's company dress policy. (*Id.*) Plaintiff alleges that he told Hanson that he wore the turban because of his Sikh religion and thus could not remove his turban, cut his hair, or shave his beard. (Compl. ¶ 27.) Plaintiff alleges that Hanson told him he was familiar with the Sikh religion, but there was a company policy prohibiting hats, so Plaintiff could not wear his turban. (*Id.*) Plaintiff alleges that Hanson also asked him to return "with short hair and a shaved beard." (*Id.*)

Plaintiff alleges that he again applied for a store operator position with Fowler in early April of 2008. (Compl. ¶ 31.) He alleges that he spoke to Hanson on the telephone and was again invited to meet with Hanson at Fowler's Durham offices, and to bring with him his Social Security card and green card. (*Id.*) Plaintiff alleges that Hanson told him if he brought these

---
[1] The facts as alleged in the Complaint are taken as true solely for purposes of the instant motion.

documents, he would be given a position as a store operator. (*Id*.) Plaintiff alleges that when he met with Hanson at Fowler's Durham offices, Hanson again told him that Fowler had a dress policy and that he could not wear a turban, long hair, or a beard as a store operator. (*Id.* at ¶ 33.) Plaintiff alleges that Hanson "repeatedly promised" that he would give him a gas station to operate if he removed his turban, cut his hair, and shaved his beard. (*Id.* at ¶¶ 33, 38.)

Plaintiff alleges that Fowler denied him the store operator position because of his religion (Sikhism) and race (Sikh) and that Fowler refused to provide a reasonable accommodation for his religious practices. (Compl. ¶¶ 28, 29, 40, 41, 42.)

## **LEGAL STANDARDS**

A motion to dismiss brought under Rule 12(b)(6) tests the legal sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993), *cert denied, 510 U.S. 1197 (1994)*. Nevertheless, the court need not accept legal conclusions stated in the complaint. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). To survive a motion to dismiss, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Moreover, if the complaint's factual allegations do not nudge the plaintiff's claims "across the line from conceivable to plausible," then the "complaint must be dismissed." *Id.* at 570.

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). When considering a motion for summary judgment, the court must view the facts and the inferences drawn from the facts in the light most

favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). Nevertheless, conclusory allegations and unsupported speculation are not sufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 249-50; *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987).

## ARGUMENT

I. **FOWLER IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S TITLE VII CLAIMS BECAUSE THEY ARE TIME-BARRED.**

Title VII actions must be commenced within 90 days after the plaintiff receives a right-to-sue letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1); *Watts-Means v. Prince George's Family Crisis Ctr.*, 7 F.3d 40, 42 (4th Cir. 1993). Under Fourth Circuit precedent, constructive receipt of the right-to-sue letter suffices to trigger running of the 90-day limitation period, and when the date of receipt is uncertain or disputed, the court is to presume that a right-to-sue letter was received three days after the EEOC mailed it. *Watts-Means*, 7 F.3d at 42 (rejecting an "actual receipt" requirement and affirming dismissal of Title VII claim on the grounds that the complaint was not filed within the limitations period); *Harvey v. City of New Bern Police Dep't.*, 813 F.2d 652, 653-54 (4th Cir. 1987) (rejecting an "actual receipt" requirement and affirming summary judgment for the defendant on the grounds that the complaint was not filed within the limitations period); *Nguyen v. Inova Alexandria Hosp.*, No. 98-2215, 1999 WL 556446, at *3 (4th Cir. 1999), *cert. denied*, 528 U.S. 1188 (2000) (Ex. A) (Title VII)(affirming summary judgment for the defendant on the grounds that the complaint was not filed within the limitations period: "If the date is unknown, however, it is presumed that service by regular mail is received within three days pursuant to Rule 6(e) of the Federal Rules.")[2]; *Ish v. Arlington County*, No. 90-2433, 1990 WL 180127, at * 1 (4th Cir. 1990) (Ex. B) (adopting a "presumption of receipt three

---

[2] The language originally found in Federal Rule of Civil Procedure 6(e) has been revised and redesignated as Federal Rule of Civil Procedure 6(d).

days after mailing if the parties dispute the date of receipt" of the right to sue letter in determining when the 90-day Title VII limitations period begins to run); *see also Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 148 n.1 (1984) (presuming that a right-to-sue letter was received three days after it was sent under Federal Rule of Civil Procedure 6(e)).

In this case, EEOC issued and mailed the First Right-to-Sue Letter to Plaintiff on February 16, 2010. Plaintiff, therefore, is presumed to have received the First Right-to-Sue Letter on February 19, 2010. Thus, the 90-day limitation period initiated by the First Right-to-Sue Letter expired on May 20, 2010. Plaintiff did not commence this action until September 21, 2010, which was 217 days after EEOC issued and mailed the First Right-to-Sue Letter, 214 days after Plaintiff is presumed to have received the First Right-to-Sue Letter, and 124 days after the expiration of the applicable 90-day limitation period triggered by the First Right-to-Sue Letter.

In his Complaint, Plaintiff does not mention the First Right-to-Sue Letter, but does state that he received the Second Right-to-Sue Letter issued by EEOC on June 23, 2010, and that the Complaint was filed within 90 days of his receipt of <u>that</u> Notice of Right to Sue. (Compl. ¶¶ 5, 7.)[3] However, the EEOC's decision to issue a second right-to-sue letter on the same charge is not effective to give Plaintiff a new 90-day limitation period or "toll" the initial one which by then had expired, unless the EEOC <u>revoked</u> the first right-to-sue letter pursuant to a reconsideration of the merits. *Santini v. Cleveland Clinic Fla.*, 232 F.3d 823, 825 (11th Cir. 2000) (affirming summary judgment for defendant on Title VII claim on the grounds that a second right-to-sue letter restarts the 90-day limitation period "only if the EEOC issues such Notice pursuant to a reconsideration on the merits"); *Gitlitz v. Compagnie Nationale Air France*, 129 F.3d 554, 557-58 (11th Cir. 1997) (affirming summary judgment for defendant on grounds

---

[3] Both right-to-sue letters were sent to the same mailing address, which is also the address Plaintiff provided in his July 2008 EEOC charge. (Hutson Dec., ¶ 3, Ex. A.) This bolsters the presumption that Plaintiff received the First Right-to-Sue Letter.

that a second right-to-sue letter is not effective to give plaintiff a new 90-day limitation period because there was no evidence that the EEOC had issued the second letter pursuant to a reconsideration of the merits); *Dougherty v. Barry*, 869 F.2d 605, 609-11 (D.C. Cir. 1989) (holding that district court erred in finding Title VII claim timely because a second right-to-sue letter had not restarted the 90-day limitation period where the EEOC had not given notice of intent to reconsider within the 90-day limitation period, and stating that "once the ninety day period is over, the EEOC cannot revive a complainant's right to sue a private respondent by issuing a second notice of right to sue"); *Brown v. Mead Corp.*, 646 F.2d 1163, 1167-68 (6th Cir. 1981) (affirming dismissal of Title VII claim on grounds that a second right-to-sue letter did not restart the 90-day limitation period).

Revocation of the right-to-sue letter necessary to provide plaintiff a new 90 day limitations period or toll the initial period requires two essential findings. First, the EEOC must issue a "notice of intent to reconsider" to all parties to the charge. 29 C.F.R. §§ 1601.19(b), 1601.21(b), (d). Second, the notice of intent to reconsider only revokes a prior right-to-sue letter if the EEOC issues it (1) before the 90-day limitation period triggered by the prior right to sue letter has expired, and (2) before the charging party has brought suit. *Id.*; *Dougherty*, 869 F.2d 610 ("Commission reconsideration reopens the door to a private action only when the reconsideration itself occurs within ninety days of the issuance of a right to sue notice").

Here, Plaintiff does not allege that the EEOC sent him a notice of intent to reconsider, much less that it did so within the initial 90-day limitation period triggered by the First Right-to-Sue Letter. Fowler never received such a notice of intent to reconsider. (Hutson Dec., ¶ 5.) In fact, Plaintiff's 90-day limitation period had expired long before EEOC issued the Second Right-to-Sue Letter. Therefore, this second letter did not provide him a new 90-day limitation period

nor toll the already expired initial period. Accordingly, the Title VII religious discrimination claims are time-barred and must be dismissed with prejudice.

II. **FOWLER IS ENTITLED TO DISMISSAL WITH PREJUDICE OF PLAINTIFF'S § 1981 CLAIM BECAUSE PLAINTIFF HAS NOT STATED A PLAUSIBLE CLAIM OF INTENTIONAL RACIAL DISCRIMINATION AND BECAUSE HIS OWN ALLEGATIONS DISPROVE HIS § 1981 CLAIM.**

The allegations in the Complaint make clear that this is a religious accommodation case, which centers around Plaintiff's allegations that Fowler's application of its facially neutral dress code policy resulted in his being denied a store operator position because he would not take off his turban or cut his hair and beard. However, likely cognizant that the Title VII religious discrimination claims are time-barred, Plaintiff has also alleged race discrimination in violation of § 1981. The complete absence of race-based factual allegations, however, shows that the § 1981 claim is nothing more than a religious discrimination claim masquerading as a race claim and, as such, it must be dismissed.

A plaintiff must show *intentional racial* discrimination to prevail under 42 U.S.C. § 1981. *Gen. Builders Contractors Ass'n. v. Pennsylvania*, 458 U.S. 375, 387, 391 (1982); *Runyon v. McCrary*, 427 U.S. 160, 168 (1976). It is well established that § 1981 does not provide a cause of action for discrimination based on religion, much less for failure to accommodate a religious practice or belief. *Runyon*, 427 U.S. at 167 (§ 1981 "is in no way addressed" to religion claims); *see also Farbstein v. Hicksville Pub. Library*, 323 F. Supp. 2d 414, 417 (E.D.N.Y. 2004) (dismissing § 1981 claim for alleged discrimination "based on [plaintiff's] membership in a class that adheres to the Jewish faith" noting that "[t]his is a claim of religious discrimination rather than racial discrimination," and that "§ 1981 is grounded in racial discrimination and does not apply to actions alleging religious discrimination.").

Likewise, it is well established that § 1981 also does not provide a cause of action for racial discrimination claims based on facially neutral policies or other forms of disparate impact. *Gen. Builders Contractors*, 458 U.S. at 391 (rejecting § 1981 claim based on facially neutral hiring hall practices and stating, "We conclude, therefore, that § 1981, like the Equal Protection Clause, can be violated only by purposeful discrimination.").

To state a discrimination claim under § 1981, a plaintiff must allege (1) that he is a member of a racial minority; (2) that the employer took adverse action against him *because of his race*; and (3) that the discrimination was intentional. *See Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 345 (4th Cir. 2006), *cert. denied*, 549 U.S. 1362 (2007) (underlined emphasis added) (affirming 12(b) dismissal of § 1981 claim because conclusory allegations of race discrimination are insufficient to state a claim "when the facts of the complaint do not support the conclusory allegations"). Simply put, race "must have actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000).

In this case, Plaintiff's § 1981 claims must be dismissed for two reasons. First, the factual allegations in the Complaint do not make a plausible showing of intentional discrimination based on race. Second, Plaintiff's factual allegations essentially prove that his race was not the basis for Fowler's refusal to offer him a store operator position.

### A. Insufficient allegations of intentional race discrimination

To survive a motion to dismiss, the complaint must "'state[] a plausible claim for relief' that 'permit[s] the court to infer more than the mere possibility of misconduct' based upon 'its judicial experience and common sense.'" *Coleman v. Maryland Court of Appeals*, No. 09-1582, --- F.3d ----, 2010 WL 4486748 (4th Cir. 2010) (Exhibit C) (quoting *Iqbal*, 129 S. Ct. at 1950).

The "'[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The Fourth Circuit has not hesitated to dismiss discrimination claims that fail to satisfy the standards set forth by the Supreme Court in *Iqbal* and *Twombly*. In *Coleman,* the Fourth Circuit applied the *Iqbal/Twombly* standard and affirmed dismissal under Rule 12 of the plaintiff's Title VII race claim because the complaint did not "assert facts establishing the plausibility of that allegation." 2010 WL 4486748, at *2. Specifically, the plaintiff's allegations that he was "treated differently as a result of his race than whites" and that he was issued a reprimand letter because of his race did not show that "race was the true basis" for his termination. *Id.* Similarly, in *Francis v. Giacomelli*, 588 F.3d 186 (4th Cir. 2009), the court affirmed dismissal of the plaintiffs' § 1981 intentional racial discrimination claim because the supporting allegations were conclusory and insufficient. *Id.* at 195. The court noted that the only allegations supporting the § 1981 claim were that "(1) that [two of the plaintiffs] are African-American males; (2) that the defendants are all white males; and (3) that the defendants have never initiated or undertaken the actions of terminating employment and physically removing the employee against white members of the Police Department." *Id.* In dismissing this claim, the court stated that "[t]he allegations in this count are nothing more than the sort of unadorned allegations of wrongdoing to which *Twombly* and *Iqbal* are directed." *Id.* at 195-96. *See also Mesumbe v. Howard University*, 706 F. Supp. 2d 86, 92-93 (D.D.C. 2010) *aff'd*, No. 10-7067, 2010 WL 4340401 (D.C. Cir. 2010) (Exhibit D) (dismissing the plaintiff's § 1981 intentional racial discrimination claim because "nothing alleged in Mesumbe's complaint demonstrates a racially discriminatory motive" and finding that the plaintiff's "conclusory allegation that similarly situated students of different national origin, ethnicity, and race have

been treated differently and more favorably," did not "suggest a racially discriminatory motive.").

Similarly, Plaintiff's Complaint contains no factual allegations that show <u>racial</u> discrimination. It simply states legal conclusions which, as a matter of law, are not legally sufficient. For example, it alleges that Fowler denied Plaintiff a store operator position "because he is a Sikh" and "because of his race (Sikh)." (Compl. ¶¶ 29, 41.) In setting forth his § 1981 claim, the Complaint alleges that "Mr. Plaintiff's race (Sikh) was a motivating factor in Fowler's decision not to offer Mr. Plaintiff a position as a store operator" and that "Fowler knowingly and intentionally failed and refused to offer Mr. Plaintiff a position as a store operator because of his race (Sikh), in violation of his rights under 42 U.S.C. § 1981." (*Id.* at. ¶¶ 68-69.) The alleged factual basis for Plaintiff's § 1981 racial discrimination claim "repeats each and every allegation" of, and does not differ in any material respect from, his Title VII religious discrimination claim. The ***only*** additional facts are his allegations that he is a Sikh and that Sikhs are a race. Even assuming these allegations are true, they do not plausibly show that Fowler discriminated against Plaintiff based on his race in violation of § 1981.

### B. <u>Plaintiff's allegations are fatal to his race discrimination claim</u>

A claim should be dismissed when allegations in the complaint are fatal to the plaintiff's claim. *Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 192 (4th Cir. 1998)(affirming dismissal of plaintiff physician's Title VII claims because allegations established that defendant had not harmed "employment relationships" but rather "relationships that supplement[ed] her private practice"), *citing, Jefferson v. Ambroz*, 90 F.3d 1291, 1296 (7th Cir. 1996) (affirming dismissal of the plaintiff's First Amendment claims where the factual allegations established that the government's interests outweighed his and stating that "if a plaintiff chooses to 'plead

particulars, and they show he has no claim, then he is out of luck—he has pleaded himself out of court.'" (quoting *Thomas v. Farley*, 31 F.3d 557, 558-59 (7th Cir. 1994))); *see also Thelen v. Mass. Mut. Life Ins. Co.*, 111 F. Supp. 2d 688, 691 (D. Md. 2000) (granting 12(b)(6) dismissal citing *Jefferson* and stating that a plaintiff's own factual allegations can demonstrate that he has no legal claim). Thus, "a plaintiff can plead himself out of court by alleging facts that show there is no viable claim." *Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008)(affirming dismissal of ERISA claims where acts alleged were inconsistent with elements of claims asserted).

Here, Plaintiff's own allegations in the Complaint are fatal to his claim of racial discrimination. Specifically, Plaintiff alleges that at his first meeting with Hanson, Hanson expressly told him that if he removed the turban and cut his hair and beard, he would receive a store. (Compl. ¶¶ 26-27.) Just a few months later, Plaintiff called Hanson again. (*Id.*, ¶31.) Hanson again invited him to Fowler's offices to discuss becoming a store operator. (*Id.*) At that point, Plaintiff obviously was still of the Sikh race – that had not and could not change. At the second meeting, Plaintiff alleges that Hanson again informed him that Fowler had a dress policy and that Plaintiff could not wear a turban, long hair or beard as a store operator, but "<u>repeatedly promised</u>" Plaintiff that <u>if he removed his turban</u>, <u>cut his hair</u>, <u>shaved his beard</u> and "<u>looked good</u>" and "<u>looked smart</u>," then <u>he "would give [Plaintiff] a gas station to operate</u>." (Compl. ¶¶ 33, 38 (emphasis added).) [4]

---

[4] Plaintiff also alleges that he asked Hanson whether his daughter, who is also presumably Sikh, could operate a store and then employ Plaintiff. Significantly, Hanson did not respond in a way that suggested that Plaintiff's daughter could not operate a store; rather, he reiterated that Plaintiff could not work for Fowler unless he removed his turban and shaved his beard. Compl. ¶ 38. If race were the issue, then Hanson likely would have responded that the daughter could not operate a store either. Plaintiff also alleges that Hanson showed him and his daughter a picture of award-winning employees who are "apparently non-Sikh Indians emphasizing their uncovered heads and shaved faces." *Id.* at ¶ 37. It is simply not plausible and defies common sense that Fowler or Hanson would employ non-Sikh Indians, but then discriminate against Sikh Indians because of their race. These allegations bolster the only logical conclusion to be drawn from the Complaint – that this is a claim of religious, not racial, discrimination.

Thus, Plaintiff admits that Hanson offered him "a gas station to operate" if he would remove his turban, cut his hair, and shave his beard.  These admissions show that Fowler did not discriminate against Plaintiff based on his immutable <u>racial</u> characteristics (which had not and would not change regardless of the presence of the turban, and uncut hair and beard), but instead refused to accommodate his religious practices by exempting him from its dress policy.  Not surprisingly, Plaintiff identified discrimination based on <u>religion</u> as the <u>sole</u> basis for his EEOC charge.  (<u>See</u> Hutson Dec., ¶ 3, Ex. A.)

In sum, Plaintiff's § 1981 claims should be dismissed because the Complaint allegations fails to sufficiently state a claim of race discrimination and, rather, prove that no such claim is viable.

### III. **FOWLER IS ENTITLED TO DISMISSAL WITH PREJUDICE OF PLAINTIFF'S WRONGFUL FAILURE TO HIRE/CONTRACT IN VIOLATION OF PUBLIC POLICY CLAIMS BECAUSE NORTH CAROLINA DOES NOT RECOGNIZE SUCH CLAIMS.**

#### A. **<u>North Carolina does not recognize a common law tort for wrongful failure to hire/contract in violation of public policy</u>**

North Carolina appellate courts have not recognized a common law tort for wrongful failure to hire in violation of public policy, nor a common law tort for wrongful failure to contract in violation of public policy.[5]  For the reasons cited below, this Court should not do so.

---

[5] Only one judicial opinion has expressly recognized a claim for wrongful failure to hire in violation of the public policy under North Carolina law.  In *Bass v. City of Wilson*, 835 F. Supp. 255, 258 (E.D.N.C. 1993), Magistrate Judge Denson denied the defendant's motion to dismiss concluding that the plaintiff had stated a claim for wrongful failure to hire in violation of public policy found in the North Carolina Equal Employment Practices Act ("NCEEPA").  The court arrived at this conclusion by looking to federal law to "interpret" the statutory language of the NCEEPA without any consideration of whether North Carolina courts would create a common law tort claim based on the language.  The Fourth Circuit appears to read *Bass* as allowing a private right of action under NCEEPA as opposed to recognizing a common law tort and, in *Smith v. First Union Nat'l Bank*, 202 F.3d 234 (4th Cir. 2000), held that no such private right of action should be allowed by the federal courts.  In the 17 years since *Bass* was decided, however,

The Fourth Circuit has held that absent a clear indication from the courts or the legislature of North Carolina recognizing a private right of action, it would be inappropriate for a federal court to create one. Here, there is no such clear indication. To the contrary, it is well established that there is no private right of action of any kind under the North Carolina Equal Employment Practice Act ("NCEEPA"), which as explained in subsection III C. below is the only statement of public policy cited by Plaintiff in this case that actually applies to the conduct alleged in the Complaint. In *Smith v. First Union Nat'l Bank*, 202 F.3d 234 (4th Cir. 2000), the Fourth Circuit rejected the plaintiff's claim that she had a private cause of action under the NCEEPA because "[n]either the North Carolina Supreme Court nor the North Carolina Court of Appeals has recognized a private cause of action under the NCEEPA" and "[a]bsent a clear indication from the courts or the legislature of North Carolina that a private right of action does exist under the NCEEPA, it would be inappropriate for a federal court to create a private right of action under the NCEEPA." *Id.* at 247 (citation omitted) (recognizing that NCEEPA has been applied only to common law wrongful *discharge* claims or specific statutory remedies for state employees); *see also Roberts v. Wal-Mart Stores, Inc.*, 503 F. Supp. 2d 787, 788 (E.D.N.C. 2007) (granting 12(b)(6) dismissal of claim for failure to promote in violation of public policy stated in NCEEPA on grounds that North Carolina appellate courts have never recognized a tort for failure to promote in violation of public policy); *Royster v. Costco Wholesale Corp.*, 378 F. Supp. 2d 595, 607-08 (M.D.N.C. 2005) (granting summary judgment for defendant on failure to hire in violation of NCEEPA on grounds that claim fails as a matter of law because North Carolina courts have not recognized a private right of action under NCEEPA).

---

no North Carolina appellate court has recognized a common law tort for wrongful failure to hire in violation of public policy.

For the same reasons, this Court should not recognize a common law claim for wrongful failure to hire or contract in violation of public policy because there is no indication from the North Carolina courts that such a common law claim exists, or action by the North Carolina legislature to create a statutory right of action. To the contrary, the only violation of public policy claim that North Carolina appellate courts have recognized is a narrow exception to the employment at will doctrine that is limited to *discharge, and only certain types of discharge.*

The fact that North Carolina courts have carved out a narrow public policy exception to the employment-at-will doctrine to recognize a common law tort claim for wrongful discharge in violation of public policy (*see Coman v. Thomas Mfg. Co.*, 325 N.C. 172, 175, 381 S.E.2d 445, 447 (N.C. 1989)) and then very narrowly applied that "public policy exception" only to certain types of discharge cases indicates that these courts likely would not further erode "employment at will" by recognizing a new claim for wrongful failure to hire or contract. A clear indication of North Carolina's narrow approach is that it has refused to extend the wrongful discharge exception to claims based on constructive termination and has refused to recognize bad faith discharge claims. *See, e.g., Whitt v. Harris Teeter*, 359 N.C. 625, 614 S.E.2d 531, 532 (N.C. 2005) (reversing a Court of Appeals decision that had recognized a wrongful discharge in violation of public policy claim based on constructive termination due to sexual harassment and unlawful retaliation); *Beck v. City of Durham*, 154 N.C.App. 221, 231, 573 S.E.2d 183, 190 (N.C. App. 2002) (North Carolina courts have not recognized wrongful constructive discharge claim); *Amos v. Oakdale Knitting Co.*, 331 N.C. 348, 359-00, 416 S.E.2d 166, 173 (N.C. 1992)(affirming 12(b)(6) dismissal of bad faith discharge claim). Given the North Carolina appellate courts' restrained recognition of common law claims for violation of public policy in the discharge context—in which there is an existing relationship between the parties, even in at-

will situations—it is unlikely these courts would recognize a public policy claim when there is only a "contemplated" relationship at best.

> **B.  Other states have refused to recognize a common law tort for wrongful failure to hire/contract in violation of public policy**

Other states that have considered claims of wrongful failure to hire in violation of public policy have rejected those claims. These courts have interpreted wrongful failure to hire claims as inappropriate attempts to broaden the wrongful discharge in violation of public policy exception to their employment-at-will doctrines. State courts in Oklahoma and Arizona have rejected wrongful failure to hire claims. *Williams v. Dub Ross Co.*, 895 P.2d 1344, 1347 (Ok. Civ. App. 1995) (refusing to recognize a tort cause of action for "wrongful failure to hire" in connection with alleged failure to hire in violation of state statutory prohibition against race discrimination in hiring); *Burris v. City of Phoenix*, 179 Ariz. 35, 43, 875 P.2d 1340, 1348 (Ariz. Ct. App. 1993) (same); *Bogue v. Better-Bilt Aluminum Co.*, 179 Ariz. 22, 33, 875 P.2d 1327, 1338 (Ariz. Ct. App. 1994) (same).

In *Williams*, the Oklahoma Court of Appeals, recognizing that the Oklahoma Supreme Court had been very precise in carving out exceptions to the employment at will doctrine, refused to extend Oklahoma's wrongful discharge in violation of public policy exception under the at-will employment doctrine to encompass wrongful failure to hire. The court in *Williams* reasoned that termination of an existing employment relationship implicates different interests than the hiring context. 895 P.2d at 1346. Specifically, the court distinguished between the contractual relationship which exists between employer and employee, even in at-will employment situations, and a merely "contemplated" employer/employee relationship. The court also noted that Oklahoma had not recognized a wrongful failure to hire tort, and that "even in other jurisdictions, wrongful failure or refusal to hire actions have, with very few exceptions,

# 1836157_3.Doc

16

Case 5:10-cv-00391-BO   Document 13   Filed 11/15/10   Page 16 of 20

been brought under federal or state anti-discrimination statutes, and have sought the relief expressly provided by the statute." *Id.* at 1347.

Similarly, in *Burris*, the plaintiffs brought a wrongful failure to hire claim alleging that the defendant had violated the public policy prohibiting handicap discrimination found in the Arizona Civil Rights Act ("ACRA"). 179 Ariz. at 43; 875 P.2d at 1348. The Court of Appeals of Arizona concluded that there was no common law tort for wrongful failure to hire based on a violation of the ACRA. *Id.* In reaching this result, the court distinguished wrongful failure to hire from wrongful discharge: "Although wrongful discharge is a tort, the duty breached is created by the contractual employment relationship between the parties, even if it is a mere at-will contract." *Id.* The Arizona Court of Appeals again rejected a wrongful failure to hire in violation of public policy claim in *Bogue*.

Not surprisingly, federal courts applying state law have also refused to recognize a tort for "wrongful failure to hire." *E.g. Fontaine v. Clermont County Bd. of Comm'rs*, 633 F. Supp. 2d 530 (S.D. Ohio 2007) ("[T]here is no cause of action under Ohio law for … wrongful failure to hire in violation of public policy."); *Bools v. Gen. Elec. Co.*, 70 F. Supp. 2d 829 (S.D. Ohio 1999) ("While this Court recognizes Plaintiff's argument that the public policy against age discrimination…would be furthered by a claim in tort for wrongful hiring decisions…, we decline to extend the scope of Ohio's exception to the doctrine of employment at will…our review of Ohio law finds no case extending the public policy tort to claims involving a wrongful failure to hire…. Our research indicates that Ohio appellate courts seem hesitant about expanding the exception the [sic] doctrine of employment-at-will beyond claims for wrongful termination…'a hiring situation goes far beyond the exception to Ohio's employee at will doctrine which has been established for terminations' …Based on the apparent reluctance of the

Ohio courts to expand the exception…this Court holds that Plaintiff's public policy tort claims must fail as a matter of law"); *Griggs v. Marion Hosp. Corp.*, 366 F. Supp. 2d 696 (S.D. Ill. 2005) (refusing to recognize wrongful refusal to hire under Illinois law: "Illinois courts have repeatedly expressed their reluctance to expand the tort [wrongful discharge in violation of public policy] beyond its original confines, particularly with respect to the first element of discharge" and noting the Illinois Supreme Court had refused to include a constructive discharge within the scope of a wrongful discharge).

### C. The other public policies Plaintiff invokes do not apply

Plaintiff cites the North Carolina Constitution and other North Carolina statutes in support of his wrongful failure to hire/contract claim. (Compl. ¶¶ 75, 77, 78.) None of these apply in this case. First, Article I, section 13 of the North Carolina Constitution concerns only state government action. *Corum v. University of North Carolina*, 330 N.C. 761, 787-88 413 S.E.2d 276, 292-93 (N.C. 1992), *cert. denied*, 506 U.S. 985 (1995). Second, N.C. Gen. Stat. § 75B-2 only applies to a person who discriminates in business matters because of that person's relationship with a foreign government, foreign person, or international organization. Third, N.C. Gen. Stat. § 99D-1 only applies to persons who conspire to interfere with civil rights through the use of force, repeated harassment, physical harm, or threats of physical harm. Plaintiff has not alleged the behaviors (state action, dealings with foreign entities and conspiracy to use or threaten force, harassment or harm) that the public policies in these laws address.

In sum, Plaintiff's state law failure to hire/contract claims should be dismissed with prejudice because North Carolina courts have not recognized such claims, and the very limited application of the public policy exception to employment at will by North Carolina courts clearly indicates that they would not recognize such claims.

# CONCLUSION

The Title VII religious discrimination claims are time-barred, the § 1981 claim is insufficiently pleaded and defeated by Plaintiff's own admissions, and the wrongful failure to hire/contract claims are not recognized under North Carolina law. Accordingly, Fowler respectfully requests that this Court grant summary judgment for it on the Title VII claims and dismiss the remaining claims with prejudice.

This the 15th day of November, 2010.

> SMITH, ANDERSON, BLOUNT, DORSETT,
> MITCHELL & JERNIGAN, L.L.P.
>
> /s/ Kerry A. Shad
> Kimberly J. Korando
> E-mail: kkorando@smithlaw.com
> N.C. State Bar No. 13573
> Kerry A. Shad
> Email: kshad@smithlaw.com
> N.C. State Bar No. 18401
> Post Office Box 2611
> Raleigh, North Carolina 27602
> Telephone: (919) 821-1220
> Fax: (919) 821-6800
> *Attorneys for Defendant*

# CERTIFICATE OF SERVICE

      I hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Laura J. Wetsch
Attorney for Plaintiff
Winslow Wetsch, PLLC
416 Morson Street
Raleigh, NC 27601
lwetsch@winslow-wetsch.com
**LR 83.1**

John B. Missing
David C. Ware
Attorneys for Plaintiff
Debevoise & Plimpton LLP
555 13th Street, N.W.
Washington, DC 20004
jmissing@debevoise.com
dcware@debevoise.com

Victoria W. Ni
Attorney for Plaintiff
Public Justice, P.C.
555 12th Street, Suite 1620
Oakland, Ca 94607-3693
vni@publicjustice.net

This the 15th day of November, 2010.

                                            /s/ Kerry A. Shad
                                            Kerry A. Shad