# EXHIBIT C

**2010 WL 4486748**
Only the Westlaw citation is currently available.
United States Court of Appeals,
Fourth Circuit.

Daniel COLEMAN, Plaintiff-Appellant,
v.

MARYLAND COURT OF APPEALS; Frank Broccolina, State Court Administrator; Larry Jones, Contract Administrator, Defendants-Appellees.

No. 09-1582. Argued Sept. 23, 2010. Decided Nov. 10, 2010.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Benson Everett Legg, Chief District Judge. (1:08-cv-02464-BEL).

**Attorneys and Law Firms**

ARGUED: Edward Smith, Jr., Law Office of Edward Smith, Jr., Baltimore, Maryland, for Appellant. Hugh Scott Curtis, Office of the Attorney General of Maryland, Baltimore, Maryland, for Appellees. ON BRIEF: Douglas F. Gansler, Attorney General, Kendra Y. Ausby, Assistant Attorney General, Office of the Attorney General of Maryland, Baltimore, Maryland, for Appellees.

Before TRAXLER, Chief Judge, SHEDD, Circuit Judge, and James C. DEVER III, United States District Judge for the Eastern District of North Carolina, sitting by designation.

**Opinion**

Affirmed by published opinion. Chief Judge TRAXLER wrote the opinion, in which Judge SHEDD and Judge DEVER joined.

**OPINION**

TRAXLER, Chief Judge:

*1 Daniel Coleman appeals the dismissal of his amended complaint in this suit alleging, as is relevant here, violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), see 42 U.S.C.A. §§ 2000e to 2000e-17 (West 2003 & Supp.2010), and of the Family and Medical Leave Act of 1993 ("FMLA"), see 29 U.S.C.A. §§ 2601-54 (West 2009 & Supp.2010). Finding no error, we affirm.

**I.**

Coleman's Title VII claim was dismissed for failure to state a claim upon which relief can be granted. See Fed.R.Civ.P. 12(b)(6). In reviewing such a dismissal, we accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. See *Flood v. New Hanover Cnty.*, 125 F.3d 249, 251 (4th Cir.1997). Viewed through that lens, the facts for purposes of this appeal are as follows.

Coleman, an African-American male, was employed by the Maryland Court of Appeals from March 2001 to August 2007 and served as executive director of procurement and contract administration since early 2003. Coleman was supervised by Frank Broccolina, a white male, and Faye Gaskins, whose race is not specified. Larry Jones, whose race also is not specified, was a member of Coleman's staff and was related to Gaskins. In October 2005, Coleman investigated a matter involving Jones and Joyce Shue, a white female. Coleman's investigation "resulted in a five (5) day suspension" for Jones. J.A. 21. After Broccolina and Gaskins intervened, however, Jones's suspension was reduced to only one day. In retaliation for Coleman's investigation, Jones falsely alleged that Coleman had steered contracts to vendors in which Coleman had an interest, and Jones encouraged Broccolina to investigate. Broccolina, in turn, shared the allegations with others despite knowing that they were false.

During his employment, Coleman satisfied the performance standards of his position and received all applicable "raises and increments." J.A. 26. However, in early April 2007, he received a letter of reprimand from Gaskins concerning "a communication protocol." J.A. 25. Coleman's appeal of the reprimand was unsuccessful. Then, on August 2, 2007, Coleman sent Broccolina a sick-leave request "based upon a documented medical condition." J.A. 26. Broccolina contacted Coleman the next day and informed him that he would be terminated if he did not resign. Coleman alleges that he was fired for requesting sick leave and because he is black. He also alleges that the contract-steering charge played a role in his termination.

After exhausting his administrative remedies, Coleman

WestlawNext © 2010 Thomson Reuters. No claim to original U.S. Government Works. 1

initiated the present action. The complaint before us names Broccolina, Jones, and the Maryland Court of Appeals as defendants and alleges violations of Title VII and the FMLA.1 On defendants' motion, the district court dismissed the Title VII claim on the grounds that Coleman failed to state a claim for which relief could be granted, see Fed.R.Civ.P. 12(b)(6), and dismissed the FMLA claim on the basis that it was barred by Eleventh Amendment immunity, see Fed.R.Civ.P. 12(b)(1).

## II.

*2 Arguing that the complaint properly alleged both a claim for disparate treatment and a claim for retaliation, Coleman maintains that the district court erred in dismissing his Title VII cause of action. We disagree.

We review de novo the grant of a motion to dismiss under Rule 12(b)(6). See Sucampo Pharm., Inc. v. Astellas Pharma, Inc., 471 F.3d 544, 550 (4th Cir.2006). When ruling on such a motion, "a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted). A complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." Id. at 93 (alteration and internal quotation marks omitted). However, to survive a motion to dismiss, the complaint must "state[ ] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009). In this regard, while a plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss, see Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-15 (2002), "[f]actual allegations must be enough to raise a right to relief above the speculative level," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). See also Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir.2009).

Title VII prohibits an employer from "discharg[ing] any individual, or otherwise ... discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C.A. § 2000e-2(a). Absent direct evidence, the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. See White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir.2004). Title VII also prohibits employers from "discriminat[ing] against any of [their] employees ... because [the employees] ha[ve] opposed any practice made an unlawful employment practice by [Title VII], or because [the employees] ha[ve] ... participated in any manner in an investigation" under Title VII. 42 U.S.C.A. § 2000e-3(a). The elements of a prima facie retaliation claim under Title VII are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action. See Mackey v. Shalala, 360 F.3d 463, 469 (4th Cir.2004).

Here, although Coleman's complaint conclusorily alleges that Coleman was terminated based on his race, it does not assert facts establishing the plausibility of that allegation. The complaint alleges that Jones and Broccolina began their campaign against Coleman in retaliation for his investigation of Jones's conflict with Shue. The complaint further alleges that Coleman "was treated differently as a result of his race than whites" and specifically identifies Broccolina as a white person who was not disciplined despite having "outside business involvements." J.A. 21-22, 25 (emphasis omitted). However, the complaint fails to establish a plausible basis for believing Broccolina and Coleman were actually similarly situated or that race was the true basis for Coleman's termination.2 The complaint does not even allege that Broccolina's "outside business involvements" were improper, let alone that any impropriety was comparable to the acts Coleman was alleged to have committed.3 Absent such support, the complaint's allegations of race discrimination do not rise above speculation. Thus, the district court correctly concluded that the complaint failed to state a Title VII race discrimination claim. See Iqbal, 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

*3 The district court also correctly ruled that Coleman failed to state a Title VII retaliation claim. No facts in the complaint identify any protected activity by Coleman that prompted the retaliation of which he complains. Coleman maintains that his protected activity was his intervention in the conflict between Jones and Shue. However, the complaint does not explain why Coleman's investigation would be considered protected activity. We therefore affirm the dismissal of the Title VII claim.

## III.

Coleman next contends that the district court erred in dismissing his FMLA claim on the basis of Eleventh Amendment immunity. Specifically, he argues that the district court erred in concluding that Congress unconstitutionally abrogated the states' Eleventh

Amendment immunity with respect to the FMLA's self-care provision. We disagree.

The Eleventh Amendment bars suit in federal court against an unconsenting state and any governmental units that are arms of the state unless Congress has abrogated the immunity. *See Alden v. Maine,* 527 U.S. 706, 755-57 (1999). In order to do so, Congress must unequivocally declare its intent to abrogate and must act pursuant to a valid exercise of its power. *See Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 55 (1996). The first prong of this test is clearly satisfied here. *See Nevada Dep't of Human Res. v. Hibbs,* 538 U.S. 721, 726 (2003) (explaining that "[t]he clarity of Congress' intent" to abrogate the states' immunity to FMLA suits "is not fairly debatable"). It is the second requirement that is at issue.

The Supreme Court has held that while Congress cannot validly abrogate a state's immunity from private suit under its Article I powers, it can do so under its Fourteenth Amendment, § 5 authority. *See Bd. of Trs. of the Univ. of Ala. v. Garrett,* 531 U.S. 356, 364 (2001). The Fourteenth Amendment provides that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Section 5 authorizes Congress to enact "appropriate legislation" to enforce these substantive guarantees. *Id.* § 5. This section authorizes Congress not only to codify the Supreme Court's holdings regarding the rights established by the Fourteenth Amendment, but also to prevent future violations of those rights. *See City of Boerne v. Flores,* 521 U.S. 507, 518 (1997). Although Congress may "enact prophylactic legislation prohibiting conduct that is 'not itself unconstitutional,' it may not substantively redefine Fourteenth Amendment protections." *Constantine v. Rectors & Visitors of George Mason Univ.,* 411 F.3d 474, 484-85 (4th Cir.2005) (citing *City of Boerne,* 521 U.S. at 519). The Supreme Court has held that to ensure Congress abides by this distinction, "[t]here must be a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end ." *City of Boerne,* 521 U.S. at 520.

*4 As originally enacted, the FMLA authorized qualified employees to take up to 12 weeks of unpaid leave annually in four circumstances, three of which concern caring for family members: bearing and caring for a child, *see* 29 U.S.C.A. § 2612(a)(1)(A), adopting or providing foster care for a child, *see id.* § 2612(a)(1)(B), and caring for a spouse, child, or parent with a serious health condition, *see id.* § 2612(a)(1)(C). The fourth circumstance is when "a serious health condition ... makes the employee unable to perform the functions of [his] position." *Id.* § 2612(a)(1)(D). Congress has subsequently amended the FMLA to also authorize leave because of an exigency arising out of the fact that an employee's spouse, child, or parent is on covered active duty, or has been notified of an impending call to such duty in the armed forces. *See* National Defense Authorization Act for Fiscal Year 2008, Pub.L. No. 110-181, § 585, 122 Stat. 3 (2008) (codified at 29 U.S.C.A. § 2612(a)(1)(E)). The FMLA creates a private right of action for equitable relief or money damages against any employer that denies its employee his FMLA rights. *See id.* §§ 2615(a), 2617(a).

In *Nevada Department of Human Resources v. Hibbs,* 538 U.S. 721 (2003), on which Coleman relies, the Supreme Court addressed whether the FMLA's third provision, relating to caring for a family member with a serious health condition, constituted a valid abrogation of the states' sovereign immunity. In concluding that it was, the Court determined that Congress had enacted the FMLA in response to "the States' record of unconstitutional participation in, and fostering of, gender-based discrimination in the administration of leave benefits." *Hibbs,* 538 U.S. at 735; *see also id.* at 731 (describing the gender gap in state leave policies as being the result of "the pervasive sex-role stereotype that caring for family members is women's work"). The Court confirmed that a "heightened level of scrutiny" applied to gender discrimination, *id.* at 736, which requires that classifications distinguishing between different genders be substantially related to the achievement of important governmental objectives. *See id.* at 728. The Court held that the test was satisfied in the case of § 2612(a)(1)(C) because it was "narrowly targeted at the fault-line between work and family-precisely where sex-based overgeneralization has been and remains strongest." *Id.* at 738. As *Hibbs* concerned only this family-care provision, § 2612(a)(1)(C), the Court did not discuss whether Congress validly abrogated states' immunity with regard to the self-care provision, § 2612(a)(1)(D).

The Court's analysis, focused as it is on the gender-related nature of § 2612(a)(1)(C), does not support the validity of Congress's abrogation of sovereign immunity for violations of § 2612(a)(1)(D).4 And, the legislative history accompanying the FMLA shows that preventing gender discrimination was not a significant motivation for Congress in including the self-care provision; rather, Congress included that provision to attempt to alleviate the economic effect on employees and their families of job loss due to sickness and also to protect employees from being discriminated against because of their serious health problems. *See Brockman v. Wyoming Dep't of Family Servs.,* 342 F.3d 1159, 1164 (10th Cir.2003); S.Rep. No. 103-3, at 11-12 (1993), *reprinted in* 1993 U.S.C.C.A.N. 3, 13-14; H.R.Rep. No. 101-28(I), at 23 (1990). Moreover, even had Congress *intended* the self-care provision to be protection against gender

discrimination, Congress did not adduce any evidence establishing a pattern of the states as employers discriminating on the basis of gender in granting leave for personal reasons. *See Touvell v. Ohio Dep't of Mental Retardation & Developmental Disabilities*, 422 F.3d 392, 402 (6th Cir.2005); *Laro v. New Hampshire*, 259 F.3d 1, 10-11 (1 st Cir.2001). Without such evidence, the self-care provision cannot pass the congruence-and-proportionality test. *See Touvell*, 422 F.3d at 402; *Laro*, 259 F.3d at 10-11.

*5 Absent a showing that the self-care provision is congruent and proportional to a Fourteenth Amendment injury that Congress enacted the provision to remedy, Coleman is left to argue that we should simply evaluate the FMLA's immunity abrogation as a whole rather than considering the self-care provision individually. But we know of no basis for adopting such an undifferentiated analysis or concluding that the *Hibbs* Court did so. *See Tennessee v. Lane*, 541 U.S. 509, 530-31 (2004) ("[N]othing in our case law requires us to consider Title II [of the Americans with Disabilities Act], with its wide variety of applications, as an undifferentiated whole."); *Toeller v. Wisconsin Dep't of Corr.*, 461 F.3d 871, 879 (7th Cir.2006) ("[W]e should-indeed must-look at each provision of the [FMLA] separately, even though we should also evaluate each provision in context."). Indeed, the *Hibbs* Court took pains throughout its opinion to make clear that the case it was deciding concerned only the family-leave portion of the FMLA. *See, e.g., Hibbs*, 538 U.S. at 725 ("We hold that employees of the State of Nevada may recover money damages in the event of the State's failure to comply with the family-care provision of the Act."); *id.* at 737 ("We believe that Congress' chosen remedy, the family-care leave provision of the FMLA, is congruent and proportional to the targeted violation." (internal quotation marks omitted)); *id.* at 740 ("[W]e conclude that § 2612(a)(1)(C) is congruent and proportional to its remedial object.").

We note that since *Hibbs* was decided, each of the four circuit courts to consider the issue has concluded that Congress did not validly abrogate sovereign immunity as to the FMLA's self-care provision. *See Nelson v. Univ. of Tex. at Dallas*, 535 F.3d 318, 321 (5th Cir.2008); *Toeller*, 461 F.3d at 877-79; *Touvell*, 422 F.3d at 398-405; *Brockman*, 342 F.3d at 1164-65. We now join these circuits. Because we hold that Congress did not validly abrogate the states' immunity, we conclude that the district court properly dismissed Coleman's FMLA claim as barred by the Eleventh Amendment.

IV.

In sum, holding that Coleman's complaint fails to state a Title VII claim for which relief could be granted and that his FMLA claim is barred by sovereign immunity, we affirm the district court's dismissal of Coleman's action.

*AFFIRMED*

Footnotes

1   The district court construed Coleman's complaint as asserting the FMLA claim against Broccolina and Jones in their official capacities only. Coleman does not challenge that interpretation on appeal.
    Coleman's complaint also includes a state-law claim for defamation. The district court dismissed that claim as barred by the Eleventh Amendment and the Maryland Tort Claims Act. Coleman does not challenge the dismissal of that claim.

2   The complaint also conclusorily alleges that Coleman was given his letter of reprimand because of his race, but no factual allegations lend any plausibility to this claim either.

3   The notion that Broccolina's "outside business interests" might make him similarly situated to Coleman is also muddled by Coleman's allegation that Broccolina and Jones knew that the allegations of contract steering against Coleman were false.

4   Before *Hibbs* was decided, we held that Congress exceeded its authority in applying the FMLA to the States. *See Lizzi v. Alexander*, 255 F.3d 128, 134-36 (4th Cir.2001). Although *Lizzi* involved self-care leave, and thus would seem to be on point, the opinion's rationale was not specific to the self-care provision. Instead, it addressed congressional authority in more general terms, concluding that Congress "does not have the constitutional power to pass such a sweeping statute on the basis of [gender discrimination]." *Id.* at 135. That analysis is no longer valid in light of *Hibbs*.

End of Document                    © 2010 Thomson Reuters. No claim to original U.S. Government Works.